UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Tosha Sohns,

       Plaintiff,

v.                                      Civil No. 09-1225 (JNE/FLN)
                                           ORDER

Bramacint, LLC, and Jane Doe,

       Defendants.

---

Trista M. Roy, Esq., Consumer Justice Center, P.A., appeared for Plaintiff Tosha Sohns.

J.D. Haas, Esq., appeared for Defendant Bramacint, LLC.

---

This is an action by Tosha Sohns against Bramacint, LLC, and Jane Doe. Sohns asserts claims for violations of the Fair Debt Collection Practices Act and for invasion of privacy by intrusion upon seclusion. The case is before the Court on Sohns's motion for partial summary judgment. She seeks summary judgment on the issue of Bramacint's liability under the Fair Debt Collection Practices Act. For the reasons set forth below, the Court grants Sohns's motion.

## I.     BACKGROUND

Except as otherwise noted, the following facts are undisputed. Sohns entered into a consumer credit transaction with Chrysler Financial in 2006 for the purchase of a 2005 Chrysler Sebring. In late 2008, she began to fall behind on the payments. Chrysler Financial referred the matter to Bramacint, and, in January 2009, a series of telephone calls from Bramacint to Sohns and her husband commenced.

On February 16, 2009, Vanessa Hummel, who worked for Bramacint from February 2008 to November 2009, placed a telephone call to Sohns's cellular phone. Hummel placed the call using a process known as "caller ID spoofing." Hummel dialed an 800 number; entered an

access code provided by Bramacint; entered the telephone number of the call recipient, i.e.,

Sohns's cellular number; and entered the telephone number to appear in the caller ID of the

recipient, i.e., the telephone number of Sohns's mother-in-law. At her deposition, Hummel

summarized the call's placement: "I used the skip tracing 800 number to change my number and

made it look like I was her mother-in-law so that she would answer the call and I would get to

speak to her."

At their depositions, Sohns and Hummel offered the following descriptions of the

conversation between them on February 16. Hummel testified:

> When she [Sohns] answered the phone, I asked if she was Tosha Traynor, and she asked who was calling. I identified myself as Investigator Ortiz, and I told her that I was calling on behalf of Chrysler Financial in reference to her 2005 Chrysler Sebring. I asked her if she was in possession of the vehicle, and she said yes. I advised her that Chrysler Financial was making legal demand for the vehicle back. I also advised her that she had one of two options, to pay the total amount due, which was roughly around $14,500, or surrender the vehicle.
>
> . . . .
>
> Tosha Traynor's voice got a little louder, and she told me that we weren't getting the vehicle back. I advised her that if Chrysler Financial wanted to, they could go legal, which would involve Chrysler filing for a writ of replevin, and a sheriff would come to their residence and serve them.

At her deposition, Sohns testified that she repeatedly asked Investigator Ortiz to disclose the

name of the company for which Investigator Ortiz worked and that Investigator Ortiz refused.

Sohns continued:

> She said, are you going to give us the car? I said, we have been telling you to come and pick it up, for several phone calls now. Nobody has come to get it. She started stating that if we did not release the call, the car, excuse me, that she was going to call the police or the sheriff's office and get an arrest warrant.

Toward the end of the conversation, it is undisputed that Hummel referred to Sohns's

daughter. Sohns testified:

She then stated that she googled me, and I said go[od] for you. [I'm] glad that you googled me. What did you find out? She said that she went to my web site and saw that I had a daughter, a beautiful daughter. And I then said, what do my kids have anything to do with this conversation, about my Sebring? She then said, wouldn't it be terrible if something happened to your kids. Because you were getting hauled off by the sheriff's department.

Later, Sohns testified that Investigator Ortiz had said, "Wouldn't it be terrible if something happened to your kids while the sheriff's department was taking you away?" The conversation ended shortly thereafter. At her deposition, Hummel described her reference to Sohns's daughter: "Before the conversation ended, I did tell Tosha Traynor that she had a beautiful daughter on her MySpace, which all I could see was the picture." Hummel denied threatening Sohns and denied stating that it would be a shame if something happened to Sohns's daughter. Asked why she felt it necessary or prudent to mention Sohns's daughter, Hummel responded:

Well, I mean, she did have a beautiful daughter . . . . And I did tell her that she had a beautiful daughter. And I was trying not to be threatening, but, you know, intimidating to her that I knew or that I had found her and I would find the car.

Hummel agreed that she was warning Sohns that Hummel had discovered information about Sohns and that Hummel would eventually locate the car.

## II.    DISCUSSION

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the party opposing the motion must respond by submitting evidentiary materials that "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2);

*see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In determining

whether summary judgment is appropriate, a court must look at the record and any inferences to

be drawn from it in the light most favorable to the party opposing the motion.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Sohns claims that Bramacint violated the Fair Debt Collection Practices Act, specifically

15 U.S.C. §§ 1692d-1692f (2006).  She asserts that Bramacint violated §§ 1692d, 1692e when its

agent used a caller ID spoofing service to conceal the agent's identity and motive for talking with

Sohns.  She also claims that Bramacint's comments about her daughter violated §§ 1692d, 1692f.

Under § 1692d, "[a] debt collector may not engage in any conduct the natural

consequence of which is to harass, oppress, or abuse any person in connection with the collection

of a debt."  Subject to an exception not relevant here, "the placement of telephone calls without

meaningful disclosure of the caller's identity" violates this section.  *Id.* § 1692d(6).  "Meaningful

disclosure requires a debt collector to 'disclose enough information so as not to mislead the

recipient as to the purpose of the call.'"  *Knoll v. Allied Interstate, Inc.*, 502 F. Supp. 2d 943, 946

(D. Minn. 2007) (quoting *Hosseinzadeh v. M.R.S. Assocs., Inc.*, 387 F. Supp. 2d 1104, 1112

(C.D. Cal. 2005)).  Section 1692d(6) "does not prohibit a debt collection agency employee from

using an alias during a telephone call, as long as the employee accurately discloses the name of

the debt collection agency and explains the nature of its business."  *Id.*  Under § 1692e, "[a] debt

collector may not use any false, deceptive, or misleading representation or means in connection

with the collection of any debt."  "The use of any false representation or deceptive means to

collect or attempt to collect any debt or to obtain information concerning a consumer" or "[t]he

use of any business, company, or organization name other than the true name of the debt

collector's business, company, or organization" violates this section.  15 U.S.C. § 1692e(10),

(14).  Finally, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  *Id.* § 1692f.

In *Knoll*, the plaintiff claimed that the defendant debt collector had violated §§ 1692d-1692f by "transmitting the false name of 'Jennifer Smith' via a caller identification device to consumers to lure them into answering the phone or returning Defendant's calls."  502 F. Supp. 2d at 945.  The defendant argued that the text available on a caller identification device is insufficient to make a full, meaningful disclosure under § 1692d(6).  *Id.* at 946.  The district court rejected this argument as "baseless":  "To meet the 'meaningful disclosure' requirement, the call identification device need only display the true name, alias or entity placing the call."  *Id.* The defendant also argued that the plaintiff received a meaningful disclosure when he returned the call and spoke with one of the defendant's employees.  *Id.*  The district court rejected this argument:

> Such disclosure was too late.  Although Allied Interstate disclosed its identity when Knoll returned the calls, Defendant did not make any attempt to identify itself when it placed the telephone calls to Knoll.  Indeed, Knoll claims that Defendant purposefully hid its identity and misled him as to the purpose of the call.

*Id.*  The district court also concluded that the plaintiff had stated a claim under § 1692e.  *Id.* at 947-48.  The Court finds the reasoning of *Knoll* persuasive.

The facts of this case are far more egregious than those of *Knoll*.  In that case, there was no apparent relationship between the putative "Jennifer Smith" and the plaintiff.  Here, Bramacint assumed the telephone number of Sohns's mother-in-law to contact Sohns.  After contacting Sohns under the guise of her mother-in-law, Bramacint engaged in an adversarial conversation with Sohns about the Sebring.  Toward the end of that conversation, Bramacint mentioned Sohns's "beautiful daughter" in an effort to intimidate Sohns.  Viewing the record in the light most favorable to Bramacint, the Court concludes that Bramacint engaged in conduct

the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt; used false, deceptive, or misleading representations or means in connection with the collection of any debt; and used unfair or unconscionable means to collect or attempt to collect any debt. The Court therefore grants Sohns's motion for partial summary judgment. Bramacint is liable to Sohns for violations of §§ 1692d-1692f.

### III.    CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1.      Sohns's motion for partial summary judgment [Docket No. 30] is GRANTED.

2.      Bramacint is liable to Sohns for violations of 15 U.S.C. §§ 1692d-1692f.

Dated:  October 1, 2010

s/  Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge